UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      Criminal Case No. 12-cr-20101
                                                      Civil Case No. 15-cv-13232
vs.                                          Hon. Mark A. Goldsmith

GREGORY N. McKNIGHT,

                Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 (DKT. 31) AND DENYING CERTIFICATE OF APPEALABILITY

### I. BACKGROUND

The Government charged Defendant with one count of wire fraud, which he committed while operating a Ponzi scheme.  See Information ¶¶ 10, 15 (Dkt. 1); see also 18 U.S.C. § 1343. Pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement (Dkt. 7), McKnight pleaded guilty as charged and waived his right to appeal his conviction and sentence, either directly or by collateral attack, in exchange for a sentencing range that would not exceed the top of a sentencing guideline range, calculated to be 151 to 188 months in prison.   The presentence report calculated McKnight's total offense level as 34 and his criminal history category as I, which yielded the projected sentencing guideline range.  Judgment was entered on August 7, 2013 (Dkt. 16).

Defendant appealed his conviction to the Sixth Circuit, which denied his appeal on June 18, 2014 (Dkt. 25).  Defendant timely filed this motion to vacate sentence, raising multiple claims that his counsel was ineffective at the district court level (Dkt. 31).

1

Due to the length of Defendant's motion, the Government required multiple extensions to file its response. One of the Government's requests for extension, which came one day after the response was previously due, was granted retroactively. See Mot. for Extension of Time (Dkt. 41). Defendant also challenges this, claiming that the Government is "in default of its filing obligation." Def. Obj. at 1 (Dkt. 43).

For the reasons stated below, Defendant's motion is denied in its entirety. His objection to the Government's motion for extension of time is also rejected.

## II. 28 U.S.C. § 2255 STANDARD

This motion is brought pursuant to 28 U.S.C. § 2255, which provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005) (internal citation omitted). Non-constitutional errors are generally outside the scope of § 2255 relief. See United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Watson v. United States, 175 F.3d 486, 488 (6th Cir. 1999) (internal citation omitted).

2

A court should grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."  Rules Governing § 2255 Cases, Rule 4(b).

### III.  DISCUSSION

Defendant raises several claims, which are numbered and range from "Claim 1.1" to "Claim 1.7." Def. Mot. at 15-16 (cm/ecf pages).

### A.  Claim 1.1

Claim 1.1 alleges that Defendant's lawyer did not explain the meaning of the collateral attack waiver that Defendant entered into as part of his guilty plea.  Def. Mot. at 5.  Regarding waiver, Defendant's plea agreement states in full:

> If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, defendant waives the right to appeal his conviction or sentence on any grounds.  If the sentence imposed is within the guideline range determined by Paragraph 2B, the government agrees not to appeal the sentence but retains its right to appeal any sentence below that range.

> Defendant understands that defendants generally have the right to attack their convictions and sentences by filing post-conviction motions, petitions, or independent civil actions.  As part of this agreement, however, defendant knowingly and voluntarily waives that right and agrees not to contest his conviction or sentence in any post-conviction proceeding, including — but not limited to — any proceeding under 28 U.S.C. § 2255.

3

Plea Agreement at 9-10 (Dkt. 7).

Defendant signed the plea agreement, which also contained a provision stating that, by signing it, he understood everything in it. Id. at 14. Defendant admits that the Court asked him whether he understood the waiver, but states that "the Court never tested that understanding." Def. Mot. at 6.

Defendant's argument that his wavier was not knowingly made centers on the mention of "28 U.S.C. § 2255," which Defendant — a layperson — claims was, at that time, "about as clear as a numerology reading in a fortune teller's tent at a county fair." Id. at 5. In other words, he states that he did not know what the statutory citation meant.

A defendant cannot waive an ineffective assistance claim that contests the validity of the guilty plea itself, including a claim that he did not knowingly grant an appeal waiver given as part of that plea. See In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007) ("[I]t would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself"). However, Acosta's rule simply means that the Court may not take the waiver at face value in the presence of a claim attacking that very waiver; although the Court may not deem "waived" Defendant's claims that the waiver was invalid, it still may analyze the claim that the waiver was invalid and, if it concludes that the claims are meritless, give effect to the waiver for the remaining claims. See, e.g., United States v. Johnson, 530 F. App'x 406, 409-410 (6th Cir. 2013) (rejecting defendant's claim that waiver was not knowing and intelligent); United States v. McArthur, No. 09-cr-20134, 2011 WL 2144436, at *3-*4 (E.D. Mich. May 31, 2011) (considering, and rejecting, defendant's ineffective-assistance attack on waiver of appellate rights). Otherwise, any defendant could relieve himself of his prior, otherwise-effective waiver

by making a specious claim that it was not knowing or voluntary, or that it was induced by ineffective assistance of counsel.

Defendant's attack on his waiver is without merit. He claims that he did not know the true import of the waiver because he was confused by the meaning of "28 U.S.C. § 2255."[1] This argument fails on two grounds. First, this point of alleged confusion is clearly framed by the plain English context that surrounds it: Although Defendant might not have known exactly what the statutory citation of § 2255 meant, he, at the very least, knew that it was a "post-conviction proceeding" that "contest[s] his conviction." Plea Agreement at 10. The claims that Defendant seeks to raise in his motion — at least, those claims that do not attack the plea itself, which will still be considered below on their merits — are foreclosed by these simple statements. The claims do not implicate some nuance particular to § 2255.

Second, and more importantly, Defendant's on-the-record assertions, made under oath, flatly belied this type of purported confusion. Because Defendant argues that "28 U.S.C. § 2255" was confusing on its face, the nature of Defendant's purported confusion is such that he would have had questions upon reading the plea agreement in the first instance. He was given several opportunities to ask questions about the terms of the plea agreement, including the meaning of § 2255, but he repeatedly asserted that he understood everything in it. See Plea Agreement at 14; Plea Hr'g Tr. at 9-10, 23 (Dkt. 22). A trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea. Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999); see also Boyd v. Yukins, 99 F. App'x 699, 703 (6th

---

[1] Defendant also argues that the term "collateral" is opaque legalese, Def. Mot. at 5, but the term "collateral" does not appear anywhere in the waiver provision of the plea agreement, see Plea Agreement at 9-10. Any confusion as to this term is, therefore, immaterial.

Cir. 2004).  Accordingly, on these facts and as the claim is articulated by Defendant, he cannot now take back his assertion that the waiver was knowing and intelligent.

It follows that Defendant's ineffective assistance claim with respect to the waiver must fail, because it is based upon the attorney's failure to explain the concepts discussed above, which the Defendant swore he fully understood — a fact that is fully corroborated from the record.  Accordingly, the waiver will be given effect with respect to any claims that do not go to the validity of the plea itself.  Attacks on the validity of the plea itself cannot be waived.  In re Acosta, 480 F.3d at 422.

**B.  Claim 1.2**

This claim alleges that "counsel misadvised [Plaintiff] as to one of the key elements of his charge," i.e., that he intended to deprive his victims of money or property.  Def. Mot. at 9. To convict a defendant of wire fraud the government must prove specific intent:

> a defendant must knowingly make a material misrepresentation or knowingly omit a material fact, [and] the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission.

United States v. DeSantis, 134 F.3d 760, 764 (6th Cir. 2003).  A conviction does not require an intent to permanently deprive the victim of property.  See United States v. Daniel, 329 F.3d 480, 487-488 (6th Cir. 2003) (requisite intent present where defendant's misrepresentations induced a loan of money that victim would not otherwise have loaned, even if defendant intended to repay the loan); see also United States v. Treadwell, 593 F.3d 990, 996 (9th Cir. 2010) ("One can intentionally 'deprive' another of property while at the same time intending to restore it at a later date.").

6

Defendant claims that he "repeatedly asked counsel" how the Government could prove an "attempt [sic, intent] to defraud when his goal . . . was always to make his 'members' whole." Def. Mot. at 9-10.  Counsel purportedly answered, "because you lied on your website," and offered no further explanation of the intent element.  Id. at 10.

It is true that a lawyer's failure to accurately inform his client of the relevant law satisfies the first prong of Strickland v. Washington, 466 U.S. 668 (1984).  See Swain v. United States, 155 F. App'x 827, 831 (6th Cir. 2005).  However, here, Defendant's counsel's explanation was substantially correct.  Defendant's website contained false statements that were designed to induce his victims to "part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission," DeSantis, 134 F.3d at 764.  Whether Defendant ever intended to give the money back is of no importance.  See Treadwell, 593 F.3d at 996. Thus, because Defendant's argument is premised upon a misapprehension that he must have intended to permanently deprive his victims of their property, he cannot satisfy the first Strickland prong, and his ineffective assistance claim fails.

Moreover, to prove ineffective assistance of counsel, Defendant must prove both Strickland prongs, and he fails to prove the second one:  He "must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  A conclusory claim of prejudice is not enough.  Cross v. Stovall, 238 F. App'x 32, 39-40 (6th Cir.2007); see also Swain, 155 F. App'x at 832 (initial plea of not guilty, followed by guilty plea after discussion with counsel, is evidence of prejudice).  Yet that is all that Defendant offers.

Relatedly, Defendant claims ineffective assistance of counsel because his lawyer failed to inform him of the availability of a "good-faith" defense. This defense, when mounted, results in the following jury instruction:

> A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under this statute merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct.

6th Cir. Pattern Jury Instructions § 10.04(2).

However, Defendant completely fails to demonstrate that he was prejudiced by counsel's alleged failure to discuss this defense with him. Defendant's implication that this defense was available is premised upon his misunderstanding of the intent element, discussed above; even if Defendant desired to make his victims whole again, it would not negate his intent to defraud, and he points to no other basis for his implicit claim that he acted in good faith. Nor does he claim that the fraudulent statements on his company's website were true, or that he was mistaken as to whether they were true.

Accordingly, Defendant has not shown that he received ineffective assistance of counsel with respect to understanding this part of his plea.

### C. Claim 1.3

In this claim, Defendant alleges that his counsel was ineffective because counsel failed to properly explain an immunity agreement that did not immunize Defendant to the degree he thought it did.

In 2008, Defendant was arrested and arraigned on a single count of wire fraud. See Criminal Compl., Ex. 3 to Def. Mot., at 81 (cm/ecf page). Defendant claims that the charge was dismissed without prejudice, and that the Court appointed counsel in the interim period between

8

that dismissal and the February 2012 Information (Dkt. 1), which Information eventually led to his guilty plea.  Def. Mot. at 13, 20.  While Defendant believed that his right to counsel had attached and that he was represented during this interim period, the Government presented him with an immunity agreement in exchange for his cooperation.  Id. at 20.  In alleged reliance on that agreement, Defendant provided the Government with an incriminating "wire transaction involving First Third [sic, Fifth Third] Bank."  Id. at 22 n.6.  Defendant now claims that counsel failed to properly explain the scope of that immunity agreement, and that, in reliance on counsel's overstatement of the agreement's protections, he provided the Government with information that strengthened its case against him.  Id. at 22.

This claim does not attack the validity of the guilty plea itself, because it does not amount to a claim that the plea was not knowing or voluntary.  Rather, the claim's only relationship to the guilty plea is that, but for the fact that the alleged ineffective assistance, the Government's case against him would have been weaker, which in turn would have given him more confidence that he would prevail at trial should he plead not guilty.  Def. Mot. at 22 ("Without his cooperation, the government would not have discovered the banking data evidence it used to prove an element of the charge.  Accordingly, Mr. McKnight would never have agreed to plead guilty in the first place.").  But this argument does not touch upon whether the plea was knowing or voluntary.  Indeed, Defendant admits that "when he first read the government's Information in support of the charge, [he] [began] to question the value of the [immunity] agreement."  Id. at 21.  Therefore, it is within the ambit of the valid appeal waiver discussed in Part III.A, supra.  For that reason, the claim is denied.

Even absent the appeal waiver, Defendant cannot show prejudice.  The documentary evidence provided by the Government shows that it received Defendant's company's records

9

from Fifth Third Bank on December 7, 2007.  Ex. 1 to Gov't Resp. (Dkt. 42-2).  Notwithstanding the merits of Defendants' argument that his right to counsel ran from the original 2008 arraignment through his 2013 sentencing, the Government possessed the information at issue long before Defendant was represented by counsel.  The immunity agreement, whether or not adequately explained by counsel, did not prejudicially induce Defendant to hand over the Fifth Third Bank records, because the Government already had the records.

In a footnote, Defendant does state, in a conclusory way, that the "particular information" that he divulged in reliance on the immunity agreement "was not in the materials that the government had seized through the execution of its search warrant."  Def. Mot. at 22 n.6. However, even assuming that Defendant's vague reference to a "search warrant" is, in fact, a reference to the subpoena used to obtain the Fifth Third Bank records in 2007 — thus comprising a charge that the Government did <u>not</u> already have the information that Defendant divulged in reliance on the immunity agreement — Defendant does not explain even basic details about what he divulged, versus what the Government obtained on its own.  Because Defendant does not show how, or to what extent, he was allegedly harmed by his misunderstanding of the immunity agreement, this footnote does not suffice to establish that he was prejudiced by counsel's alleged failure.

### D.  Claim 1.4

In this claim, Defendant argues that counsel was ineffective at sentencing for failing to investigate the extent of Defendant's cooperation with the investigation into his Ponzi scheme, and for failing to develop an argument for a downward variance from the sentencing guidelines. Def. Mot. at 26-27; <u>see also</u> 18 U.S.C. § 3553(e); United States Sentencing Guidelines § 5K1.1. Defendant lists 11 individuals, and he states that his cooperation with authorities "contributed to

10

the government's investigation or prosecution" of those individuals.  Id. at 24.  However, Defendant only details his involvement in the investigation or prosecution of two of those 11 individuals.

Defendant concedes that his counsel "did investigate case law concerning both the departure and variance questions related to substantial assistance" with the investigation.  Def. Mot. at 27.  However, Defendant points to two statements of counsel, in which counsel told the Court that Defendant did not provide substantial assistance in the prosecution of others, such that a variance or departure would be justified.  Id. at 28 (citing Def. Sentencing Mem. at 6 (Dkt. 11); Sentencing Tr. Vol. 2 at 15-16 (Dkt. 17)).  Defendant claims that the opposite is true, and that counsel should have told the Court that Defendant's substantial assistance should be taken into account.  Id.

Claim 1.4 does not challenge the guidelines range or anything else in the plea agreement.  Rather, it asserts that counsel should have argued for a downward variance after the plea agreement was signed.  This challenge is barred by his waiver, which specifically includes a waiver of his right to contest his sentence in any post-conviction proceeding.  Plea Agreement at 10.  Indeed, prior to signing the plea agreement, Defendant reviewed the sentencing memorandum prepared by counsel, which clearly states that Defendant did not provide substantial assistance.  Def. Sentencing Mem. at 6.  Yet, apparently without informing his counsel that he was unhappy with everyone's understanding of what assistance he provided to the Government, Defendant pleaded guilty subsequent to reviewing that memorandum — waiving his right to make this claim in the process.

Even absent the waiver, Defendant does not satisfy Strickland's strictures.  Because Defendant only details his involvement in the investigations of two of the 11 listed individuals,

11

these two are the only claims that merit review; the mere mentions of the other alleged wrongdoers amounts to a conclusory claim that Defendant furnished the Government with information related to them.  See Robinson v. United States, 582 F. Supp. 2d 919, 926 (N.D. Ohio 2008) (conclusory claims in § 2255 motions need not be considered).  The two claims that arguably clear this hurdle involve Matthew Gagnon and Jamie Duncanson.[2]

Regarding Gagnon, Defendant points to a single page of a civil complaint filed by the Securities and Exchange Commission, which appears to outline a scheme in which Gagnon extorted tens of thousands of dollars from Defendant.  Ex. 4 to Def. Mot., at 92 (cm/ecf page). From this, Defendant infers that the details of Gagnon's extortion scheme "could only have come originally from [Defendant's] proffered testimony."  Def. Mot. at 25.  Defendant claims that his attorney should have combed the docket of another case because it was "available to counsel at the time," after which counsel should have "connect[ed] the dots," inferring that the factual allegations in the civil complaint came from his client's cooperation with the Government.  Id. at 28.

Defendant has failed to make a showing that his counsel was ineffective under the first prong of Strickland.  First,  to effectively investigate matters related to his client's sentencing, an attorney need not turn over every stone.  See Bobby v. Van Hook, 558 U.S. 4, 11 (2009).  "This is not a case in which the defendant's attorney[] failed to act while potentially powerful mitigating evidence stared [him] in the face, or would have been apparent from documents any reasonable attorney would have obtained.  It is instead a case, like Strickland itself, in which defense counsel's decision not to seek more mitigating evidence . . . than was already in hand fell

---

[2]  Gagnon was Defendant's "mentor in developing" Defendant's company, and Duncanson managed five "accounts" that were "associated with" Defendant's company.  Def. Mot. at 24.

well within the range of professionally reasonable judgments."   Id. at 11-12 (internal citations and quotations omitted).

Here, it is not the case that "any reasonable attorney would have obtained" a copy of the civil complaint against Gagnon.  Defendant argues that his attorney should have been on notice of the civil complaint because of a footnote in the Government's sentencing memorandum that mentions the SEC's criminal complaint.  Def. Mot. at 25; see also Gov't Sentencing Mem. at 3 n.3 (Dkt. 10).  But there is no reason to believe that a review of the criminal case involving Gagnon — notwithstanding whether such review was even required of a reasonable attorney — would have tipped Defendant's lawyer off to the existence, and alleged import, of the civil case.

Furthermore, even if his attorney somehow came upon the civil complaint, Defendant's own admission that one must "connect the dots" undermines a claim that Defendant's cooperation with authorities "stared [counsel] in the face" or was "apparent" from the civil complaint against Gagnon.  The cited portion of the civil complaint merely alleged some unsavory dealings between Defendant and Gagnon; it does not state or imply that Defendant supplied the Government with the information, see Ex. 4 to Def. Mot., at 92 (cm/ecf page), and there are several other ways that the Government could have obtained the information (e.g., surveillance activity; discussions with Gagnon or other witnesses).  Defendant cannot argue that his counsel was ineffective for failing to piece together what Defendant himself cannot persuasively show.

Regarding Duncanson, Defendant claims to have provided information to the Government on November 21 and 25, 2008, at which meetings Ms. Duncanson "almost certainly came to the government's attention exclusively through [his] cooperation."  Def. Mot. at 26. However, Defendant cannot satisfy the first prong of Strickland because, contrary to Defendant's

claim, Ms. Duncanson did not come to the Government's attention through his cooperation.  Ms. Duncanson was the target of a complaint filed by the National Futures Association ("NFA") on June 20, 2008.  Subsequently, the Government and NFA exchanged information regarding Ms. Duncanson, and these conversations are cited in the very portion of the Secret Service investigative report that Defendant submitted to prove that he is the exclusive reason for the Government's knowledge about Ms. Duncanson's existence.  See Def. Mot. at 26.  Clearly, the Government would have known about Ms. Duncanson through the NFA, notwithstanding whether Defendant offered a later tip of his own.   And counsel is not ineffective for failing to take action, such as advocating for a downward departure or variance, that would be frivolous. See United States v. Hanley, 906 F.2d 1116, 1121 (6th Cir. 1990).

With respect to both Gagnon and Duncanson, Defendant reviewed counsel's sentencing memorandum, which clearly states that Defendant did not provide substantial assistance.  Yet, he pleaded guilty subsequent to reviewing that memorandum without informing his counsel of the alleged assistance that he provided to the Government.  He has not since shown that counsel was ineffective for nevertheless failing to argue that he provided substantial assistance, not least in part because he has not shown that such substantial assistance occurred.  This claim is, therefore, rejected.

### E.  Claim 1.5

Claim 1.5 concerns the amount of loss on which Defendant's sentence was based in part. Pursuant to U.S. Sentencing Guidelines § 2B1.1, a defendant's offense level is increased in proportion to the monetary loss attributable to his crimes.  Application Note 3 to § 2B1.1 provides guidance for the determination of loss.  The application note states that "loss is the greater of actual loss or intended loss." Id. § 2B1.1, cmt. (n.3) (2015). "[A]ctual loss" is "the

14

reasonably foreseeable pecuniary harm that resulted from the offense," and "intended loss" is "the pecuniary harm that the defendant purposely sought to inflict," including "the pecuniary harm that would have been impossible or unlikely to occur." Id. § 2B1.1, cmt. (n.3(A)(ii)(I) and (II)). In situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information. Id. § 2B1.1, cmt. (n.3(C)). Such estimates "need not be determined with precision." United States v. Triana, 468 F.3d 308, 320 (6th Cir. 2006).

Defendant's plea agreement stipulated to actual losses between $20 million and $50 million. Plea Agreement at 4. His sentencing memorandum was in accord. Sentencing Mem. at 4. Ultimately, for purposes of sentencing, this Court found total losses of $48,969,560.00, equaling the restitution amount. See Judgment at 6. Now, Defendant asserts that "the loss estimate, be it actual loss or intended loss, is far below the $20 million counsel convinced him to stipulate to." Def. Mem. at 38. He further asserts that his prior assent to a minimum loss of $20 million "was based exclusively on the advice of counsel." Id. at 34.

Defendant's claim does not survive his valid waiver of his right to challenge his sentence via collateral attack. In this claim, Defendant attempts to further undermine his waiver by arguing that he had "less than 48 hours to consider" the plea agreement's range of potential losses. Def. Mot. at 34. Notwithstanding the fact that 48 hours is likely sufficient time to read and understand a plea agreement, the Government's Exhibit 3 contradicts Defendant's contention: it is a letter from Defendant's attorney, memorializing the fact that he provided Defendant a copy of the plea agreement more than a month before the plea hearing. See 1/3/2012 Letter, Ex. 3 to Gov't Mot. (Dkt. 42-4).

Even absent waiver, Defendant's argument regarding counsel's effectiveness fails to satisfy Strickland's two prongs.  Defendant offers no factual basis whatsoever for his claim that the losses were something other than what was found by the Court.  Defendant is in the best position to know the true extent of the losses caused by his activity, and yet he does not explain either (i) why the $48,969,560.00 figure is wrong; or (ii) the true amount of loss.  Without a concrete, supportable allegation that the loss figure was incorrect, counsel cannot have been ineffective for presenting Defendant with the plea agreement he signed.  Similarly, without establishing that the loss figure was incorrect, Defendant cannot show that he suffered prejudice.  A conclusory claim of prejudice is insufficient to establish prejudice.  Cross, 238 F. App'x at 39.

Defendant also argues that counsel "never explained that the ambiguous loss estimate of $20 million to $50 million was to be used to enhance his sentencing range; that it would result in an increase of 22 basis points," and that, had he known the role that losses played in his guidelines range, he would not have pleaded guilty.  Def. Mot. at 35.  Because this criticism of the loss estimate goes to the validity of the plea itself, it cannot be waived.  In re Acosta, 480 F.3d at 422.

Nevertheless, this claim fails.  The plea agreement explicitly explained that the amount of loss is used to enhance the guideline range.  See Plea Agreement at 15 (cm/ecf page); see also Plea Agreement at 11 (incorporating Worksheet A).  By signing the plea agreement, Defendant indicated that he was aware of the very fact of which he now claims ignorance.  Counsel cannot be ineffective for failing to repeat to his client something the client already knows.

Finally, Defendant notes that, at the sentencing hearing held on November 19, 2014, he expressed confusion as to the amount of restitution.  Def. Mot. at 37 ("Mr. McKnight challenged the numbers openly at sentencing . . . .").  Specifically, at the sentencing hearing, Defendant was

16

asked whether the then-current restitution estimate, exceeding $42 million, was accurate, and he responded: "I don't believe so. I don't know how he came up with the figures." <u>See</u> Sentencing Tr. Vol. 2 at 5:13-15.

Immediately addressing the Defendant's concerns regarding the amount of restitution, the Court modified the presentence investigation report to account for the fact that "restitution will change over time." <u>Id.</u> at 7:7-22 (modifying restitution to reflect an amount "less any recoveries"). Thereafter, the Court invited Defendant to comment, but Defendant declined:

> THE COURT: All right. Mr. McKnight, anything you want to tell me regarding sentencing?
>
> DEFENDANT: No, Judge. No, your Honor.

<u>Id.</u> at 19:4-6. Thus, notwithstanding the fact that Defendant only expressed confusion as to the restitution number — as opposed to the loss calculation, which can differ from restitution, <u>see, e.g.</u>, <u>United States v. Healy</u>, 553 F. App'x 560, 567 (6th Cir. 2014); <u>see also</u> 18 U.S.C. § 3663A(b)(1)(B) (reducing restitution amount by monies recovered) — the Court attempted to address Defendant's objection, after which Defendant indicated that he had nothing more to say.

## F.  Claims 1.6 and 1.7

Defendant's final two claims concern restitution. Specifically, Claim 1.6 states that "counsel failed to object when the Court delegated its authority to determine a restitution payment schedule to the Federal Bureau of Prisons ("BOP"). The resulting penalties assessed by the BOP against Mr. McKnight for failure to meet its schedule is a consequence of ineffective assistance of counsel." Def. Mot. at 40. In Claim 1.7, Defendant argues that "[c]ounsel failed to affirmatively pursue a rigorous accounting of the loss amount as it is related to restitution." <u>Id.</u> at 43.

17

These are not claims upon which federal habeas relief can be granted.  To the extent that a habeas petitioner is not claiming the right to be released, but rather challenges the imposition of a fine or other costs, he may not bring a petition for writ of habeas corpus.  United States v. Watroba, 56 F.3d 28, 29 (6th Cir.1995). Continuing liability under a restitution order is like a fine-only conviction and is not a serious restraint on liberty as to warrant habeas relief.  Mullins v. Birkett, 09-cv-12515, 2010 WL 764386, at *3 (E.D. Mich. Mar. 4, 2010) (citing Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997)); see also Flores v. Hickman, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008) (imposition of restitution order as part of California state sentence could not be challenged under habeas statute because restitution did not affect duration of habeas petitioner's state custody).  Because the appropriate relief would not be release from custody, the grant of a writ of habeas corpus would be inappropriate.  Mullins, 2010 WL 764386, at *3 (citing United States v. Zaragoza, 16 F. Supp. 2d 1111, 1112 (N.D. Ind. 1998)).

"Nor does it matter that Petitioner couched [his] restitution claim in terms of ineffective assistance of counsel. . . .   [E]ven when errors in restitution are raised as the basis of an ineffective assistance claim, habeas corpus relief is not available to challenge a restitution order imposed as part of a criminal sentence."  Thomas v. Warren, 12-cv-11351, 2012 WL 6115047, at *5 (E.D. Mich. Dec. 10, 2012) (citing United States v. Thiele, 314F.3d 399, 402 (9th Cir. 2002)); Zaragoza, 16 F. Supp. 2d at 1111-1112.  Accordingly, these claims are rejected.

**G.  The Government's Request for an Extension**

Finally, Defendant raises a procedural issue.  On January 4, 2016, the Court granted the Government an extension of time to file its response to Defendant's motion (Dkt. 39).  Pursuant to that extension, the response was due on February 15, 2016 — a federal holiday, on which both the United States Attorney's office and this Court were closed.  Immediately thereafter, on

18

February 16, 2016, the Government moved for a one-day extension to file its response (Dkt. 41), which this Court granted.  The Government's response was filed on the same day (Dkt. 42).

Defendant objects, arguing that the Government's response should be stricken because the February 15 deadline came and went without a response being filed.  Def. Obj. at 1 (Dkt. 43). He further argues that he is entitled to have his § 2255 motion granted because, if this Court strikes the Government's response, his motion will be unopposed.  Id. at 2.

Defendant's objection is denied for two reasons.  First, the Federal Rules of Civil Procedure permit the retroactive extension of a missed deadline, provided the filer submits a motion and "failed to act because of excusable neglect."  See Fed. R. Civ. P. 6(b)(1)(B).  By granting the Government's motion, this Court determined that the Government failed to act because of excusable neglect.  The concept of "excusable neglect" "may encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit." LoSacco v. City of Middletown, 71 F.3d 88, 93 (2nd Cir. 1995); see also Skyywalker Records, Inc. v. Navarro, 742 F. Supp. 638, 639 (S.D. Fla. 1990) (one-day delay was excusable neglect where filer "failed to appreciate" 30-day limitations period); Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd., 769 F. Supp. 2d 269, 281 (S.D.N.Y. 2011) (permitting late filing of affidavit where filer failed to plan ahead for third party's role in executing affidavit). Here, the delay was only one day, and Defendant does not allege that he was prejudiced.  The retroactive extension of the Court-imposed response deadline was, therefore, effective, curing any default on the Government's part.

Second, even if the Government's response was rejected as untimely, Defendant points to no authority — and the Court is aware of none — holding that a petitioner is entitled to habeas

relief, based on non-meritorious arguments, simply because the Government did not file a response.

## V.  CERTIFICATE OF APPEALABILITY

Because Defendant's claim for relief lacks merit, the Court will also deny a certificate of appealability.  To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate enough for encouragement to proceed further.  See Slack v. McDaniel, 529 U.S. 473, 483–484 (2000).  For the reasons stated above, the Court will deny Defendant a certificate of appealability because reasonable jurists could not find this Court's assessment of his claims debatable.

## VI.  CONCLUSION

For the reasons stated above, Defendant's motion to vacate his sentence (Dkt. 31) is denied, and his objection to the Government's response (Dkt. 43) is overruled.

SO ORDERED.

Dated:  June 2, 2016                           s/Mark A. Goldsmith
Detroit, Michigan                              MARK A. GOLDSMITH
                                               United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 2, 2016.

                                               s/Karri Sandusky
                                               Case Manager